UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

              Plaintiff,

        v.

DONALD T. THIES *aka* DON THIES
and TANIA M. THIES, Husband
and Wife; COOPERATIVE
AGRICULTURAL PRODUCERS, INC.;
WILBUR-ELLIS COMPANY; LOWELL
SCHUMAN and PHYLLIS SHUMAN;
DELORES THIES; and MARLENE
BROWN,

              Defendants.

NO. CV-08-275-EFS

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

In June 2005, the United States Department of Agriculture's Farm Service Agency ("FSA") loaned Defendants Donald T. Thies and Tania M. Thies $123,340.00 to produce their 2005 wheat, lentil, and barley crops. The FSA's loan matured in June 2006, and the Thieses failed to repay the loan as required.  In September 2008, Plaintiff United States of America filed suit on FSA's behalf to collect on the unpaid debt.  (Ct. Rec. 1.) After a delay attributed to the Thies' Chapter 7 bankruptcy filing (Ct. Recs. 9 & 11), Plaintiff moved for summary judgment to collect on the debt that was not discharged in the Thies' Chapter 7 bankruptcy.

ORDER * 1

1  (Ct. Rec. 14).   After reviewing the submitted material[1] and relevant

2  authority, the Court is fully informed and grants Plaintiff's motion for

3  the reasons set forth below.

4  ### I. Background[2]

5   The Thieses work five (5) farms totaling 877 acres in Washington

6  and Idaho.  In 2005, they sought a one-year operating loan to produce

7  their 2005 wheat, lentil, and barley crops.  On April 22, 2005, the

8  Thieses signed a Security Agreement covering the chattels and crops on

9  all five (5) farms (Ct. Rec. 16-3, Ex. B); on June 1, 2005, the Thieses

10  signed a Promissory Note for a $123,340.00 operating loan.  *Id.*, Ex. B.

11  FSA properly perfected its interest in the Thies' real property (as

12  collateral) by filing a financing statement with the Washington State

13  Department of Licensing ("DOL") on January 31, 2000.  *Id.*, Ex. C.[3]  On

14

15

16   [1]Defendants failed to respond, which is a basis in and of itself for

17  granting Plaintiff's motion.  *See* LR 7.1(h)(5) (failure to file a timely

18  opposition memorandum is considered by the Court as consent to entry of

19
    an adverse order).

20
   [2]In a motion for summary judgment, the facts are generally set forth

21
    in a light most favorable to the nonmoving party.  *Leslie v. Grupo ICA,*

22
    198 F.3d 1152, 1158 (9th Cir. 1999).  But since Defendants failed to file

23
    a statement of opposing facts under Local Rule 56.1(b), the Court accepts

24
    Plaintiff's facts as admitted without controversy.

25

26   [3]The perfection date predates the 2005 operating loan because FSA

    extended the Thieses operating loans in 2000 and 2004 as well.

    ORDER * 2

1  December 23, 2004, FSA continued the financing statement through January

2  31, 2010. *Id.*, Ex. D.

3      The Thieses harvested their 2005 crops and delivered them to

4  Defendant Cooperative Agricultural Producers, Inc. ("Co-Ag") for storage

5  and sale. Co-Ag sold part of the 2005 crops and issued two (2) proceed

6  checks for $30,994.37 and $9,974.52 payable to Mr. Thies, Co-Ag,

7  Defendant Wilbur-Ellis, and FSA. Co-Ag and Wilbur-Ellis refused to

8  endorse the checks so that FSA could deposit the 2005 crop proceeds

9  because both companies claimed supplier liens on the 2005 crops for seed

10 and fertilizer. As a result, the checks were never negotiated and are

11 now stale.

12      FSA's 2005 operating loan matured on June 1, 2006 - the Thieses

13 failed to repay as required. *Id.* at 10. In May 2007, FSA offered the

14 Thieses an opportunity to apply for various loan servicing programs in

15 order to stave off foreclosure. The Thieses took no action. The

16 Thieses owe $122,995.45 for FSA's 2005 operating loan - interest is

17 accruing at a rate of $13.4221 per day. *Id.* After filing suit in

18 September 2008 on the FSA's behalf to collect on the unpaid debt

19 (Ct. Rec. 1), this matter was stayed because the Thieses filed for

20 Chapter 7 bankruptcy. (Ct. Rec. 9.) After receiving a discharge of all

21 personal liability and emerging from Chapter 7 bankruptcy protection,

22 the Court lifted the automatic stay (Ct. Rec. 11) and Plaintiff filed

23 the summary judgment motion now before the Court (Ct. Rec. 14).[4]

24

25      [4]FSA recognizes that it can no longer collect on the entire

26 $123,340.00 owing from the 2005 operating loan because this debt was

discharged in bankruptcy. (Ct. Rec. 19.) Therefore, FSA's summary

ORDER * 3

1                          **II. Discussion**

2   **A.   Summary Judgment Standard**

3        Summary judgment is appropriate if the "pleadings, depositions,

4   answers to interrogatories, and admissions on file, together with the

5   affidavits, if any, show that there is no genuine issue as to any

6   material fact and that the moving party is entitled to judgment as a

7   matter of law."   FED. R. CIV. P. 56(c).   Once a party has moved for

8   summary judgment, the opposing party must point to specific facts

9   establishing that there is a genuine issue for trial. *Celotex Corp. v.*

10  *Catrett,* 477 U.S. 317, 324 (1986).   If the nonmoving party fails to make

11  such a showing for any of the elements essential to its case for which

12  it bears the burden of proof, the trial court should grant the summary

13  judgment motion.   *Id.* at 322.   "When the moving party has carried its

14  burden of [showing that it is entitled to judgment as a matter of law],

15  its opponent must do more than show that there is some metaphysical

16  doubt as to material facts.   In the language of [Rule 56], the nonmoving

17  party must come forward with 'specific facts showing that there is a

18  *genuine issue for trial.*'"   *Matsushita Elec. Indus. Co. v. Zenith Radio*

19  *Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in

20  original opinion).

21       When considering a motion for summary judgment, a court should not

22  weigh the evidence or assess credibility; instead, "the evidence of the

23  non-movant is to be believed, and all justifiable inferences are to be

24  _____

25  judgment is limited to collecting on the collateral secured by the

26  Security Agreement and not discharged in bankruptcy, to wit: the 2005

    crop proceeds.

    ORDER * 4

1 drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255

2 (1986).  This does not mean that a court will accept as true assertions

3 made by the non-moving party that are flatly contradicted by the record.

4 *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties

5 tell two different stories, one of which is blatantly contradicted by

6 the record, so that no reasonable jury could believe it, a court should

7 not adopt that version of the facts for purposes of ruling on a motion

8 for summary judgment.").

9 **B.   Proper Collection**

10     To establish that FSA can rightfully collect on the portion of the

11 Thies' debt that was not discharged in bankruptcy, Plaintiff must show

12 that: 1) the Thieses executed a one-year promissory note for a 2005

13 operating loan from FSA; 2) the Thieses also executed a security

14 agreement creating a security interest in their 2005 crops and proceeds;

15 3) FSA perfected its security interest with a first-in-time Uniform

16 Commercial Code filing with the Washington DOL; 4) FSA legally holds and

17 owns both the Note and Security Agreement; 5) the Thieses are in default

18 and the Security Agreement provides for foreclosure in the event of

19 default; 6) FSA complied with all regulations before pursuing

20 collection; 7) the Thieses owe a sum certain to FSA; and 8) there are no

21 interests senior to FSA's interest in the Thies' real property.  *See*

22 *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995)

23 (Finding that to prevail in collecting on a promissory note at the

24 summary judgment stage, the holder "must establish the note in question,

25 that [the borrower] signed the note, that the [holder] was the legal

26 owner and holder thereof, and that a certain balance was due and owing

on the note."); 7 U.S.C. § 1981d (FSA must give a past-due borrower

ORDER * 5

1  notice about, *inter alia*, available loan servicing programs, deadlines

2  for applying for loan servicing programs, and all applicable appeal

3  procedures); 7 U.S.C. § 2001(g) (FSA must, before foreclosure, give the

4  borrower an opportunity to appeal any adverse servicing decision).

5      Plaintiff has established each of the eight (8) required elements.

6  First, the Thieses executed a June 1, 2005 promissory note for a 2005

7  operating loan from FSA.  (Ct. Rec. 16-3, Ex. A.)  Second, the Thieses

8  executed an April 22, 2005 Security Agreement with FSA creating a

9  security interest in their 2005 crops and proceeds.  *Id.*, Ex. B.  Third,

10  FSA perfected its security interest in the Thies' real property by

11  filing a financing statement with the Washington DOL on January 31,

12  2000, which was properly continued through January 31, 2010.  *Id.*, Exs.

13  C & D.  Fourth, FSA legally holds and owns the Note and Security

14  Agreement.  (Ct. Rec. 16-2 at 8.)  Fifth, not only are the Thieses in

15  default on their 2005 operating loan, but also the executed Security

16  Agreement provides for foreclosure in the event of default.  *Id.*; Ct.

17  Rec. 16-3, Ex. B.  Sixth, after default, FSA provided the Thieses with

18  notice and an opportunity to apply for various loan servicing programs

19  in order to avoid collection.  (Ct. Rec. 16-2 at 10.)  After receiving

20  notice, the Thieses took no action.  Seventh, to date, the Thieses owe

21  FSA $122,995.45 ($108,868.21 in principal, $14,127.24 in interest).

22  (Ct. Rec. 16-3, Ex. K.)  Eighth, FSA possesses the senior interest in

23  the Thies' real property because Co-Ag and Wilbur-Ellis' supplier liens

24  for seed and fertilizer, while valid and perfected, apply to the Thies'

25  2003 and 2004 crops only, not the 2005 crops.  *Id.*, Exs. F-J.  Because

26  these facts are undisputed, summary judgment for Plaintiff on the

collateral secured by the Security Agreement is appropriate.

ORDER * 6

1                           **III. Conclusion**

2        Accordingly, **IT IS HEREBY ORDERED:**

3        1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14)** is

4    **GRANTED.**   Plaintiff has first lien priority on, and is entitled to

5    collect, the Thies' 2005 crops and the proceeds of any sales of those

6    crops;

7        2. Defendant Co-Ag shall sell the Thies' 2005 crops, if any, that

8    remain in its possession and control and remit all proceeds, less

9    reasonable storage and sales costs incurred by Co-Ag, by check made

10   payable to FSA only;

11       3. Co-Ag shall pay FSA $40,968.89, which is the sum of the two (2)

12   previously issued proceed checks for the Thies' 2005 crops;

13       4. **JUDGMENT** shall be entered in Plaintiff's favor;

14       5. All pending hearing and trial dates are **STRICKEN**; and

15       6. This file shall be **CLOSED.**

16       **IT IS SO ORDERED.**   The District Court Executive is directed to

17   enter this Order and to provide copies to counsel.

18       **DATED** this 20th   day of July 2009.

19

20                              S/ Edward F. Shea
                             EDWARD F. SHEA
21                     United States District Judge

22   Q:\Civil\2008\275.MSJ.wpd

23

24

25

26

ORDER * 7